"Waties, concurred in opinion with BuRke,
but went more fully into his reasons. He admitted the right of the state to take the property of an individual, for purposes of public necessity, or even for public utility; but in exercising this power, it was essential to its validity, that a full compensation should be provided at the time, for every injury that the individual might suffer. This appeared to him, he said, to be the construction given by the writers quoted on the part of defendant’s counsel, to shew the lawfulness of this power. Vattel, b. 1. c. 20. s. 244. expressly says, that ei justice demands, that the individual should be recom- “ pensed and Bynkershoek, who was also quoted, explicitly declares the same thing. The common law of England, which has also recognised this power, does it always with the same restriction. “ The legislature,” says Mr. Blackstone, “ may order a new road to be made through “ the private grounds of an individual, and may compel '« him to acquiesce in it. But how does it compel him ? “ not by stripping him of his property, in an arbitrary man- “ ner, but by giving him a full indemnification or equivalent “ for it." And even this is an exertion of power which it “ indulges with great caution.” Which is evident in the act of parliament for making a new road from Black Fry- *59 Ur’s Bridge, across St. George’s Fields. The corporation of London is thereby authorized and directed, to treat with the owners of lands that might be taken away by the road, for the purchase of the same ; and in case of refusal ¡to treat for the value of the lands taken, the same is to be assessed by a jury ; which he said, had a strong similitude to the present case. The road in that case, most probably in some cases enhanced the value of the lands through which it passed, and therefore was productive of benefit to the owners. But parliament thought proper, by the sacred principle of compensation, to provide for any possible injury. The rights of our citizens are not less valuable than those of the people of England: we have besides a constitution, which limits and controls the power of the legislature, the 9th article of which, declares, that no freeman shall be de-vested of his property, but by the judgment of his peers, or the law of the land. - On a former occasion, (in the case of the City Corporation against Zylstra,) he said, he had gone into a long investigation of the technical import of the words lex terree, and therefore should only state here, that they meant the common law, and ancient statutes down to the time of Edward II. which were considered as part of the common law. This was the true construction given to them by all the commentators on magna charta, from whence they were adopted by our constitution. If the lex terree meant any law which the legislature might pass, then the legislature would be authorized by the constitution, to destroy the right, which the constitution had expressly declared, should for ever be inviolably preserved. This is too absurd a construction to be the true one. He said he understood, therefore, the constitution to mean, that no freeman shall be deprived of his property, but by such means as are authorized by the ancient common law of the land. According to this construction, the right of property is held under the constitution, and not at the will of the legislature. In what way, then, does the common law authorize the power of taking private property fpr public uses ? “ by pre=, *60 “ viding,” says Mr. Blackstone, “ a fulMndemnificatiori “ for it.” This is the condition on which the valid exercise of this power depends. But the law under consideration does not provide any indemnification, nor does it make the public responsible in any way for any injury which might be done to the plaintiffs. It has not therefore complied with the terms of the common law, and is not conformable to the constitution. It was urged, however, that no injury could arise to any of the parties complaining, and therefore it was not necessary that the legislature should provide any indemnification. This fact may be so; but it makes no difference in the case. Was the legislature itself to be the judge of that fact ? Can it prescribe what terms it pleases for the individual, and determine either the measure of compensation for property taken, or that none at all is due ? This would be attributing to it a power which belongs only to despots. And yet even the greatest despots have not always felt themselves at liberty to exercise it in this way. De Tott, in his memoirs of the Turkish government, mentions a remarkable instance to the contrary, which it may not be amiss to relate on this occasion. The sultan Mas-tapha being desirous of building and endowing a new mosque, fixed upon a spot, in the city of Constantinople, which belonged to a number of individuals. He treated with all of them, for the purchase of their parts, and they all willingly complied with his wishes, except a Jew, who owned a small house on the place, and who refused to give it up. A considerable price was offered him, but he resisted the most tempting offers. His partiality for the spot, or his obstinacy, was stronger than his avarice. All the city was astonished at his rashness, and expected every hour to see his house demolished, and his head upon a pole. But what was the conduct of the sultan ? of one who was the absolute master of the lives of millions ? He consulted his mufti, who answered that private property was sacred, that the laws of the prophet forbade his taking it absolutely, but he might compel the Jew to lease it to him, as *61 long as he pleased, at a full rent. The sultan submitted to the iaw. He observed, that we might learn two things from this example of a despot: 1st. That the sovereign power, although absolute, is not at liberty to take away private property and decide, at its own discretion, that no compensation is due ; 2d. That the principle of indemnification is deeply founded in natural justice. It was further said in this case, if any injury is done, the parties might have recourse to a court and jury for redress. But whom could they sue ? not the commissioners, not the city council; for they would justify under the act. Whom then ? why, no one. But suppose they could sue, what would be the nature of the action ? It could not be founded on contract, for there was none. It must then be on a tort; it must be an action of trespass, in which the jury would give a reparation in damages. Is not this acknowledging that the act of the legislature is a tortious act ? and can any thing prove more-fully, the arbitrary character of the act, than this ?
He said, it was painful to him to be obliged to question the exercise of any legislative power, but he was sworn to support the constitution, and this was the most important of all the duties which were incumbent on the judges. On the faithful performance of this high duty would depend the integrity and duration of our government. If the legislature is permitted to exercise other rules than those ordained by the constitution, and if innovations are suffered to acquire the sanction of time and practice, the rights of the people will soon become dependent on legislative will, and the constitution have no more obligation than an obsolete law.. But if this court does its duty, in giving to the constitution an overruling operation over every act of the legislature which is inconsistent with it, the people will then have an. independent security for their rights, which may reader them perpetual. In exercising this high authority, the judges claim no judicial supremacy ; they are only the administrators of the public will. If an act of the legislature is held void, it is not because the judges have any control *62 over the legislative power, but because the act is forbidden by the constitution, and because the will of the people, which is therein declared, is paramount to that of their representatives, expressed in any law. As the act under consideration appeared to him to be repugnant to this high will, he was bound to say”, that it ought not to have any operation, and that the prohibition should be granted.
As the judges were equally divided in opinion in this case, the applicants took nothing by their motion.
The rule for the prohibition was, therefore, discharged..